**FORD MOTOR COMPANY, Petitioner,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 78–2041.

United States Court of Appeals, District of Columbia Circuit.

Argued June 4, 1979.

Decided July 2, 1979.

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. *See* 43 Fed.Reg. 37972–73 (1978) (to be codified at 40 C.F.R. § 86.081–8(a)(1)(i)) (1981 standard); 43 Fed.Reg. 43303 (1978) (to be codified at 40 C.F.R. § 86.080–8(a)(1)(i)) (1980 standard).

H. Edward Dunkelberger, Jr., Washington, D. C., with whom John B. Douglas, III, Washington, D. C., was on the brief, for petitioner.

Nancy Long, Atty., Dept. of Justice, with whom James W. Moorman, Asst. Atty. Gen., Angus MacBeth, Atty., Dept. of Justice, Joan Z. Bernstein, Gen. Counsel, Environmental Protection Agency, Gerald K. Gleason, Deputy Associate Gen. Counsel, and Bruce I. Bertelsen, Atty., Environmental Protection Agency, Washington, D. C., were on the brief, for respondent.

Before WRIGHT, Chief Judge, TAMM, Circuit Judge, and BARRINGTON D. PARKER,* United States District Judge for the District of Columbia.

Opinion for the court PER CURIAM.

PER CURIAM:

Ford Motor Co. (Ford) petitions for review of hydrocarbon exhaust emission regulations adopted by the Environmental Protection Agency (EPA) for 1980 and 1981 light-duty motor vehicles (passenger cars). The regulations are applicable to all exhaust hydrocarbons and limit total hydrocarbon emissions to 0.41 grams per vehicle mile.[1] Ford argues that EPA exceeded its authority by including methane hydrocarbons in the regulations. We hold that the regulations are within the scope of EPA's authority, and we dismiss the petition for review.

Ford contends that EPA lacks authority to regulate emissions of methane because EPA has acknowledged that methane is a nonreactive hydrocarbon which does not contribute to air pollution.[2] Ford argues that under section 202(a) of the Clean Air Act (Act), as amended, 42 U.S.C.A.

2. *See* 44 Fed.Reg. 20086 (1979) ("EPA scientists believe methane is photochemically unreactive and does not contribute to the formation of photochemical smog.").

§ 7521(a) (1977 Pamphlet),[3] EPA can prescribe emission standards only for pollutants that, in its judgment, cause or contribute to air pollution which reasonably may be anticipated to endanger public health or welfare. In response, EPA asserts that hydrocarbon regulation is authorized under section 202(b) of the Act, 42 U.S.C.A. § 7521(b) (1977 Pamphlet),[4] which deals specifically with hydrocarbon emissions.[5] Both parties agree that the narrow legal issue in this case is whether the Act permits EPA to control emissions of methane hydrocarbons.[6]

EPA explained the rationale underlying the 1980 and 1981 hydrocarbon emission regulations in its denial of Ford's petition for reconsideration. *See* 44 Fed.Reg.

3. Section 202(a), 42 U.S.C.A. § 7521(a) (1977 Pamphlet) provides in part:

> (a) Except as otherwise provided in subsection (b) of this section—
>
> (1) The Administrator shall by regulation prescribe (and from time to time revise) in accordance with the provisions of this section, standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines, which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare. Such standards shall be applicable to such vehicles and engines for their useful life (as determined under subsection (d) of this section, relating to useful life of vehicles for purposes of certification), whether such vehicles and engines are designed as complete systems or incorporate devices to prevent or control such pollution.
>
> (2) Any regulation prescribed under paragraph (1) of this subsection (and any revision thereof) shall take effect after such period as the Administrator finds necessary to permit the development and application of the requisite technology, giving appropriate consideration to the cost of compliance within such period.

4. Section 202(b), 42 U.S.C.A. § 7521(b) (1977 Pamphlet) provides in part:

> (b)(1)(A) The regulations under subsection (a) of this section applicable to emissions of carbon monoxide and hydrocarbons from light-duty vehicles and engines manufactured during model years 1977 through 1979 shall contain standards which provide that such emissions from such vehicles and engines may not exceed 1.5 grams per vehicle mile of hydrocarbons and 15.0 grams per vehicle mile of carbon monoxide. The regulations under subsection (a) of this section applicable to emissions of carbon monoxide from light-duty vehicles and engines manufactured during the model year 1980 shall contain standards which provide that such emissions may not exceed 7.0 grams per vehicle mile. The regulations under subsection (a) of this section applicable to emissions of carbon monoxide from light-duty vehicles and engines manufactured during the model year 1980 shall contain standards which provide that such emissions may not exceed 7.0 grams per

vehicle mile. The regulations under subsection (a) of this section applicable to emissions hydrocarbons from light-duty vehicles and engines manufactured during or after model year 1980 shall contain standards which require a reduction of at least 90 percent from emissions of such pollutant allowable under the standards under this section applicable to light-duty vehicles and engines manufactured in model year 1970. Unless waived as provided in paragraph (5), regulations under subsection (a) of this section applicable to emissions of carbon monoxide from light-duty vehicles and engines manufactured during or after the model year 1981 shall contain standards which require a reduction of at least 90 percent from emissions of such pollutant allowable under the standards under this section applicable to light-duty vehicles and engines manufactured in model year 1970.

5. EPA endorses the relationship between subsections (a) and (b) as explained in the Senate Report accompanying the Clean Air Act Amendments of 1970, Pub.L. No. 91–604, 84 Stat. 1676:

> The authority provided in section 202(a) would continue to be available to the Secretary to establish standards for light duty motor vehicles (passenger cars) during the period prior to and following the effective date of the standards established by subsection (b).

S.Rep. No. 1196, 91st Cong., 2d Sess. 24 (1970). EPA concludes:

> This language of the 1970 Senate Report makes it clear that Congress intended, as so provided by the "at least" language of subsection (b), that the Administrator had the authority to determine that greater control of hydrocarbons was required.
>
> It was most certainly not the intent of Congress to limit in any way the implementation of its own statutorily set emission standards in subsection (b) by the general grant of authority to the Administrator to establish additional emission limits under subsection (a).

Brief for Respondent at 22.

6. *See* Brief for Petitioner at 19; 44 Fed.Reg. 20084 (1979) (Denial of Petition for Reconsideration of Hydrocarbon Standard).

20084–88 (1979). The agency first outlined the background of section 202. Prior to the Clean Air Act Amendments of 1970, Pub.L. No. 91–604, 84 Stat. 1676 (1970 Amendments), EPA adopted a hydrocarbon emission standard for model year 1970 automobiles. The standard was based on the measurement of all hydrocarbons, including methane. *See* 33 Fed.Reg. 8304, 8306 (1968).[7] In the 1970 Amendments, Congress established a statutory standard for hydrocarbon emissions applicable to automobiles manufactured during or after model year 1975. Section 202(b)(1)(A) of the Act, as amended in 1970, provided that "[t]he regulations under subsection (a) applicable to emissions of . . . hydrocarbons . . . shall contain standards which require a reduction of at least 90 percentum from emissions of . . . hydrocarbons allowable under the standards under this section applicable . . . in model year 1970." Congress required EPA to prescribe, within 180 days after enactment of the 1970 Amendments, 1975 emission standards. *See* 1970 Amendments, § 6(a) (amending § 202(b)(2)).

EPA instituted rulemaking proceedings to establish the level of hydrocarbon emissions which would represent a ninety percent reduction from the 1970 standards. In 1971, EPA determined that the level of hydrocarbons permissible under the ninety percent reduction requirement was 0.41 grams total hydrocarbons per vehicle mile. *See* 36 Fed.Reg. 12657, 12658 (1971). Both parties agree that 0.41 grams represents a ninety percent reduction in methane and nonmethane emissions allowable under the 1970 total hydrocarbon emissions standard. Both parties also agree that inclusion of methane in the standard results in a greater than ninety percent reduction in nonmethane hydrocarbons.[8]

As EPA explained, the 1975 deadline for implementing the ninety percent reduction standard was postponed many times by administrative and legislative action, and an interim standard of 1.5 grams of total hydrocarbons per mile was established. *See* 44 Fed.Reg. 20085 & n.5. In the Clean Air Act Amendments of 1977, Pub.L. No. 95–95, 91 Stat. 685 (1977 Amendments), Congress extended the 1.5 gram interim standard to 1978 and 1979 model year automobiles and established 1980 as the first model year in which compliance with the ninety percent reduction standard was required. 42 U.S.C.A. § 7521(b).[9] In response to the 1977 Amendments, EPA made technical changes in its regulations to reflect the new 1980 date for compliance with the ninety percent reduction standard.[10] The regulations carried forward the emissions level established by EPA in 1971 of 0.41 grams of total hydrocarbons per vehicle mile.

EPA decided that in enacting section 202(b) of the Act, as amended, Congress intended it to regulate emissions on the

---

7. EPA adopted the 1970 standards under the authority of the Motor Vehicle Air Pollution Control Act, Pub.L. No. 89–272, 79 Stat. 992 (1965), which provided in part:

    Sec. 202(a) The Secretary shall by regulation, giving appropriate consideration to technological feasibility and economic costs, prescribe as soon as practicable standards, applicable to the emission of any kind of substance, from any class or classes of new motor vehicles or new motor vehicle engines, which in his judgment cause or contribute to, or are likely to cause or to contribute to, air pollution which endangers the health or welfare of any persons, and such standards shall apply to such vehicles or engines whether they are designed as complete systems or incorporate other devices to prevent or control such pollution.

    (b) Any regulations initially prescribed under this section, and amendments thereto,

with respect to any class of new motor vehicles or new motor vehicle engines shall become effective on the effective date specified in the order promulgating such regulations which date shall be determined by the Secretary after consideration of the period reasonably necessary for industry compliance.

8. *See* 44 Fed.Reg. 20086. Automobiles with catalytic converters emit a greater percentage of methane hydrocarbons than automobiles without such equipment. Ford argues that manufacturers employing catalyst technology, as it does, are thus penalized by an emissions standard that measures total hydrocarbons, including methane.

9. *See* note 4 *supra.*

10. *See* note 1 *supra.*

basis of total hydrocarbon exhaust. *See* 44 Fed.Reg. 20085. We agree. When Congress established 1980 as the model year for compliance with the ninety percent reduction standard, it was aware that EPA, following the mandate of the 1970 Amendments, had prescribed regulations that computed the ninety percent reduction on the basis of total hydrocarbon emissions, including methane. The Conference Report explicitly referred to the 0.41 standard:

> The House concurs in the Senate amendment, with amendments such that: the existing 1977 auto emission standards are extended for two additional years, through model years 1978 and 1979; the statutory standard of 0.41 HC [hydrocarbons] is required in model year 1980. . . .

\*   \*   \*   \*   \*   \*

EMISSIONS

[Grams per mile]

| Model year | HC |
| --- | --- |
| 1977–79 | 1.5 |
| 1980 | .41 |
| 1981 and thereafter | .41 |

H.R.Rep. No. 564, 95th Cong., 1st Sess. 166 (1977), *reprinted in* [1977] U.S.Code Cong. & Admin.News, 1077. *See also* S.Rep. No. 127, 95th Cong., 1st Sess. 68–69 (1977); H.R. Rep. No. 294, 95th Cong., 1st Sess. 17–18 (1977). Congress's failure to change EPA's interpretation of the statutory ninety percent reduction standard in the 1977 Amendments, as well as its explicit reference to the 0.41 standard, amount to an implied legislative recognition that the total hydrocarbon emission standards are based on a

---

11. *See* note 4 *supra*.

12. Ford asserts that EPA's interpretation of "hydrocarbons" is inconsistent with its interpretation of "oxides of nitrogen" in section 202(b)(1)(B), 42 U.S.C.A. § 7521(b)(1)(B) (1977 Pamphlet). EPA excludes some oxides of nitrogen, such as nitrous oxide, in its definition of "oxides of nitrogen." *See* 40 C.F.R. § 86.077-2(b) (1977); 40 C.F.R. § 86.077-8(a)(1)(iii) (1977). EPA explains that the emission standard for "oxides of nitrogen" has always been based only on measurement of nitric oxide and nitrogen dioxide because all other oxides are emitted in quantities too small to measure

---

valid administrative interpretation of section 202(b). *See Harley Davidson Motor Co. v. EPA*, 194 U.S.App.D.C. 309, 312, 598 F.2d 228, 231 (1979).

Ford argues that the language of section 202(b) of the Act contradicts EPA's assertion that Congress intended it to regulate all hydrocarbon emissions. In Ford's view, the reference in section 202(b) to "[t]he regulations under subsection (a) of this section applicable to emissions of . . . hydrocarbons,"[11] indicates that hydrocarbons can be regulated only if they "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare" under section 202(a). We reject Ford's argument.

Section 202(a), by its own terms, applies only "[e]xcept as otherwise provided in subsection (b) of this section." Thus, the statutory language provides ample room for EPA's interpretation of section 202(b) as authorizing regulation of all hydrocarbon emissions. Furthermore, in setting out the interim standard of "1.5 grams per vehicle mile of hydrocarbons," Congress used the word "hydrocarbons" to refer to a total hydrocarbon standard. *See* text at —— —— of 196 U.S.App.D.C., at 687–688 of 604 F.2d *supra*. It is unlikely that Congress would have intended the word "hydrocarbons" to mean total hydrocarbons in one sentence and nonmethane hydrocarbons in another sentence of the same statutory subsection.[12]

Ford also asserts that an emissions standard covering nonharmful methane hydrocarbons is contrary to the Act's purpose of achieving ambient air quality standards. *See* 42 U.S.C.A. §§ 7408, 7409 (1977 Pamph-

---

without extreme difficulty. *See* Brief for Respondent at 23 n.19.

We find Ford's analogy unpersuasive. EPA historically regulated hydrocarbons on a total hydrocarbon basis, and Congress used a total hydrocarbon standard as the basis for the ninety percent reduction requirement. *See* text at —— of 196 U.S.App.D.C., at 686 of 604 F.2d *supra*. Congress's acquiescence in EPA's computation of the ninety percent reduction on a total hydrocarbon basis, *see* text at —— —— —— of 196 U.S.App.D.C., at 687–688 of 604 F.2d *supra*, further undermines Ford's argument.

let).[13]   This argument is without merit.   It is undisputed that EPA's application of the ninety percent reduction requirement to *total* hydrocarbon emissions, rather than to *nonmethane* hydrocarbon emissions, results in less emissions of harmful nonmethane hydrocarbons.   *See* Brief for Respondent at 34–37; Reply Brief for Petitioner at 10–11.

We have considered Ford's remaining objections to EPA's interpretation of sections 202(a) and (b), and hold that EPA had authority under section 202(b)(1) to regulate hydrocarbon emissions on a total hydrocarbon basis.   Accordingly, we dismiss Ford's petition for review.

*So ordered.*

13.   EPA's ambient air quality standards are specified in terms of nonmethane hydrocarbons.   *See* 44 Fed.Reg. 20086.